**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**
**NORTHERN DIVISION**

| | |
|---|---|
| SUSAN L. DAVIS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION NO. 2:07cv880-TFM |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| COMMISSIONER OF SOCIAL SECURITY, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM OPINION AND ORDER**

Following an Appeals Council remand of a favorable decision in her application for disability insurance benefits under Title II of the Social Security Act ("the Act"), 42 U.S.C. §§ 401 *et seq.*, and supplemental security income benefits under Title XVI of the Act, 42 U.S.C. §§ 1381 *et seq*, Susan L. Davis ("Davis") received a hearing before an administrative law judge ("ALJ") who rendered an unfavorable decision. When the Appeals Council rejected review, the ALJ's decision became the final decision of the Commissioner of Social Security ("Commissioner"). Judicial review proceeds pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3), and 28 U.S.C. § 636 (c), and for reasons herein explained, the court AFFIRMS THE COMMISSIONER'S decision.

**I. STANDARD OF REVIEW**

Judicial review of the Commissioner's decision to deny benefits is limited. The court cannot conduct a *de novo* review or substitute its own judgment for that of the Commissioner. *Walden v. Schweiker*, 672 F.2d 835 (11th Cir. 1982). This court must find the

Commissioner's decision conclusive "if it is supported by substantial evidence and the correct legal standards were applied." *Kelley v. Apfel*, 185 F. 3d 1211, 1213 (11th Cir. 1999), citing *Graham v. Apfel*, 129 F. 3d 1420, 1422 (11th Cir. 1997).

Substantial evidence is more than a scintilla — i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995), citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

If the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the court would have reached a contrary result as finder of fact, and even if the court finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560.

The district court will reverse a Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient reasoning to determine that the Commissioner properly applied the law. *Keeton v. Department of Health and Human Services*, 21 F.3d 1064, 1066 (11th Cir. 1994).

## II.  ADMINISTRATIVE FINDINGS

A fully favorable decision in Davis's case was issued by an ALJ on February 17,

2006, but a remand order from the Appeals Council vacated that decision with directions to further develop the record on the issue of whether Davis was in fact "mentally retarded" under 20 C.F.R. 404 Subpart P § 12.05(C).[1] Davis, age 35 at the time of the hearing on remand, completed the twelfth grade. Davis also attended trade school courses in cosmetology and secretarial skills. Her past work experience includes employment as a cashier, cook, fast food worker, and dishwasher.[2] Davis alleges she became disabled on November 15, 1997, from asthma, lower back problems, an inability to concentrate, and a bulging disc.[3] She did not engage in substantial gainful work activity at any time relevant to her application period.

The ALJ decision now challenged by Davis found she was severely impaired by borderline intellectual functioning, asthma, bulging disc at L5-S1, hypertension, gastroesophageal reflux disease, and obesity.[4] The ALJ concluded Davis did not have any impairment or combination of impairments that meet or equal in severity any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.[5] The ALJ credited testimony from a medical expert who found the treating physician's conclusion of disability was not supported

---

[1] R. at 54-55.

[2] R. at 527-28.

[3] R. at 29, 92.

[4] R. at 32.

[5] R. at 32.

by physical findings.[6] The hearing transcript shows the ALJ and medical expert engaged in a function-by-function analysis of Davis's capacity for work-related activity.[7] A second medical expert agreed with the conclusion of the consulting psychologist that Davis had borderline intelligence, but was not mentally retarded.[8]

The ALJ found Davis's subjective allegations of pain and functional limitations were not fully credible, were unsupported by substantial medical evidence of record, and were inconsistent with her reported activities.[9] He determined she retained the residual functional capacity ("RFC") to perform the exertional and nonexertional requirements of light work with specified limitations. The ALJ considered testimony from a vocational expert (VE) which indicated Davis could not perform her past relevant work, but could work as an assembler, cashier, or grader/sorter. The ALJ accepted the VE's opinion, and concluded Davis is not disabled.[10]

### III. ISSUES

Davis raises two issues for judicial review:

1. Whether the Commissioner erred by in finding Davis's impairments did not meet the listing at 20 C.F.R. 404 Subpart P § 12.05(C).

---

[6] R. at 29; 516-17.

[7] R. at 513-14.

[8] R. at 522-23.

[9] R. at 32.

[10] R. at 33. The ALJ's disability analysis followed the five-step sequential evaluation process set forth in 20 C.F.R. §404.1520 and summarized in *Phillips v. Barnhart*, 357 F. 3d 1232 (11th Cir. 2004).

2.	Whether the ALJ's decision is supported by substantial evidence.

### IV.  DISCUSSION

**1.	The ALJ did not err in finding Davis's mental impairments failed to meet the criteria of 20 C.F.R. 404 Subpart P §12.05 C.**

Davis argues the ALJ erred when he found her intellectual deficiencies failed to meet the listing at 20 C.F.R. 404 Subpart P §12.05(C).  She argues the finding on this issue was speculative and the case should be remanded for further development of the record.[11]  The Commissioner responds the record contained sufficient evidence to correctly find Davis did not meet the listing criteria.

The Commissioner's regulation states "[M]ental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period . . . ."  20 C.F.R. 404 Subpart P § 12.05.  The provision continues by setting out four sets of alternative criteria, each of which qualify an applicant for a finding of disability.  Subparagraph C, at issue here, lists "[A] valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation or function."  20 C.F.R. 404 Subpart P § 12.05(C).  The Eleventh Circuit has stated

> Generally, a claimant meets the criteria for presumptive disability under section 12.05(C) when the claimant presents a valid I.Q. score of 60 to 70 inclusive, and evidence of an additional mental or physical impairment that has more than "minimal effect" on the claimant's ability to perform basic work

---

[11]Pl. Br. at 14-15.

    activities. This court, however, has recognized that a valid I.Q. score need not be conclusive of mental retardation where the I.Q. score is inconsistent with other evidence in the record on the claimant's daily activities and behavior.

*Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (internal citation omitted).

    The record shows the ALJ considered Davis's intelligence scores of Verbal IQ (73), Performance IQ (64), and Full Scale IQ (66).[12] A consultative psychological examination of Davis by Dr. Guy Renfro found that, although Davis's scores were within the mild range of mental retardation, her adaptive behavior elevated her classification to borderline intellectual functioning.[13] Dr. Doug Mckeown testified at the hearing that he concurred with Dr. Renfro's assessment of Davis' intellectual functioning. A Mental Residual Functional Capacity Assessment found Davis did not have any marked limitations of functioning.[14] No document in the record classifies Davis as "mentally retarded."

    Davis testified about her education and work history during the administrative hearing. She stated she completed the twelfth grade, and was able to read, write, and perform simple math, addition, and subtraction.[15] The hearing transcript shows Davis was engaged during questioning and able to follow each question. The ALJ noted Davis has a driver's license, received some training in cosmetology and secretarial skills, and performed semi-

---

[12] R. at 23.

[13] R. at 19.

[14] R. at 19.

[15] R. at 492-93.

skilled employment.[16] Davis contends these specific facts do not rebut the presumption of her retardation, and suggests her intelligence scores were conclusive on the issue. However, the ALJ decision correctly cited *Lowery* for its holding that low IQ scores do not establish mental retardation where adaptive functioning demonstrates otherwise.[17] The ALJ fully explained his regulatory obligation to evaluate evidence beyond Davis's IQ scores. Accordingly, he reviewed Davis's skills in communication, self-care, home living, self-direction, among other areas, to find she functioned at a level higher than mental retardation, and did not meet the listing.[18]

The ALJ did not err by finding Davis did not meet the criteria in § 12.05(C). The decision demonstrates his awareness of the proper interpretation of § 12.05(C), as he carefully showed how the listing is applied in cases where a claimant's work history and activities rise above mental retardation. The Court finds the ALJ correctly applied § 12.05, under which "a claimant must at least (1) have significantly subaverage general intellectual functioning; (2) have deficits in adaptive behavior; and (3) have manifested deficits in adaptive behavior before age 22." *Crayton v. Callahan*, 120 F.3d 1217, 1219 (11th Cir. 1997); *see also Sellers v. Barnhart*, 246 F.Supp.2d 1201, 1207 (M.D. Ala. 2002) (holding a claimant must demonstrate "deficits in adaptive behavior" under § 12.05). The ALJ's determination in Davis's case is supported by substantial evidence, and this court finds no

---

[16]R. at 26.

[17]R. at 23-24.

[18]R. at 26-27.

error in the ALJ's decision.

## 2. **The record contained substantial evidence for the ALJ to find Davis is able to work.**

Davis argues the record does not contain substantial evidence for the ALJ's implied determination that she can perform sustained work for "8 hours a day, for 5 days a week."[19] The Commissioner responds that the record supported the ALJ's finding that Davis could perform light work, as specified, over the course of a standard work week.

The five-step sequential analysis set forth in regulations require that a claimant prove that he is disabled. 20 C.F.R. § 404.1512; *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999). Davis's challenge to the ALJ's RFC determination invokes Social Security Ruling 96-8p, which provides that "[i]n assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities. . . 8 hours a day, for 5 days a week."[20] Davis correctly notes the ALJ's decision did not specifically discuss her ability to perform sustained work. She also cites an assessment by her treating physician, David Runyon, who felt "she would miss frequent days of work," due to asthma and back pain, as evidence of her inability to perform light work in a sustained manner as implied by the ALJ's decision.[21]

A residual functional capacity is an assessment, based upon all of the relevant evidence, of a claimant's remaining ability to do work despite his impairments. 20 C.F.R.

---

[19] Pl. Br. at 15.

[20] SSR 96-8p, at 6.

[21] Pl. Br. at 16; R. at 428.

§ 404.1545(a). SSR 96-8p contemplates work in an ordinary work setting on a regular and continuing basis. *Lewis v. Callahan,* 125 F.3d 1436, 1440 (11th Cir. 1997). The ALJ specifically indicated his adherence to SSR 96-8p in determining Davis's RFC, his reliance upon actual laboratory findings, and obligation to consider several factors related to a claimant's lifestyle and treatment.[22] The ALJ looked to the range of Davis's activities, which he found inconsistent with her reported inability to perform work activity, as well as her discontinuance of physical therapy and continued weight gain.[23] The ALJ also noted Dr. Runyon's May, 2006, opinion that Davis would "miss frequent days of work," despite his findings in concurrent and later exams that her lungs were relatively clear lungs and she continued to gain weight despite her existing obesity.[24] These factors are specifically listed in SSR 96-8p as relevant in an ALJ's determination of a claimant's RFC.[25]

The ALJ considered medical expert testimony from Dr. Jack Evans. Dr. Evans answered the ALJ's specific inquiries of Davis's abilities in a function-by-function analysis, testifying that Davis could sit/stand/walk in the manner expected of someone employed for an eight hour work day.[26] Dr. Evans stated that Dr. Runyon's opinion was not supported by

---

[22] R. at 27.

[23] R. at 29.

[24] R. at 20.

[25] *See* SSR 96-8p, at 4.

[26] R. at 513.

physical findings related to asthma or an examination of Davis's back.[27] The medical expert's testimony strongly contradicted Dr. Runyon's opinion, and he explained how Davis did not, in his opinion, meet the Commissioner's disability listing due to asthma, bulging disc, and obesity.[28] This testimony was a factor in the ALJ's finding that Dr. Runyon's opinion on Davis's RFC should be accorded very little weight.[29] Further, the ALJ cited regulations to support his statement that he was not bound by Dr. Runyon's assessment on Davis's ability to work.[30] The Court notes the ALJ's statement is consistent with Eleventh Circuit precedent which makes clear that the disability evaluation process is not bound by the legal conclusions of medical personnel, as opposed to objective medical findings to be weighed in a disability determination. *Lewis, id.*

The ALJ limited Davis's RFC in a manner he found consistent with the medical evidence of record and Dr. Evan's testimony, including a sit/stand option, frequent grasping, pushing/pulling of arm controls, and fine manipulation; occasional pushing/pulling of leg controls; frequent reaching; occasional stooping, crouching kneeling, and crawling.[31] The Court notes that, although the ALJ did not specifically discuss Davis's ability to perform

---

[27]R. at 30; 516-17. The Court notes Davis does not specifically challenge the ALJ's decision to discredit Dr. Runyon's opinion.

[28]R. at 517-21.

[29]R. at 30.

[30]R. at 30.

[31]R. at 30; 513-14.

sustained work activities in the decision, the record shows his questions and Dr. Evans's answers on the function-by-function analysis provide a foundation for the physical RFC determination, and the implicit determination that Davis can perform sustained work activity on a regular and continuing basis.  The Court finds substantial evidence supported the ALJ's decision as to Davis's RFC, and consequently, her ability to perform a specified range of light work.

## V.  CONCLUSION

Pursuant to the findings and conclusions detailed in this *Memorandum Opinion*, the court concludes that the ALJ's non-disability determination is supported by substantial evidence and proper application of the law.  It is, therefore, **ORDERED** that the decision of the Commissioner is **AFFIRMED.**  A separate judgment is entered herewith.

Done this 25th day of July, 2007.

/s/ Terry F. Moorer
TERRY F. MOORER
UNITED STATES MAGISTRATE JUDGE